THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE W. SMITH, Defendant-Appellant.

Third District    No. 3—84—0552

Opinion filed April 25, 1985.

Robert Agostinelli and Kenneth D. Brown, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Peter M. Tumminaro, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

On July 19, 1984, defendant, George Smith, was convicted of burglary and armed violence and sentenced to an extended term of 40 years on the armed violence count, with credit for 228 days served. Smith was not sentenced on the burglary conviction.

The burglary occurred on May 31, 1981, when Elizabeth Blatt, George Zdralevich's mother-in-law and next-door neighbor, heard a loud thud in Zdralevich's house and saw his back door standing open. Mrs. Blatt called the mayor, who arrived at Zdralevich's house minutes later accompanied by the chief of police. The police entered Zdralevich's house and found Smith in the basement, where he surrendered and was taken into custody. Another suspect was found in the attic. When Zdralevich arrived on the scene, a search of the house was conducted, and police found two guns which Zdralevich testified did not belong to him. Zdralevich, a registered firearm dealer, testified that he kept 12 guns in his home and that one gun which he kept under a pillow on a footstool in the living room had been moved. Following a jury trial in the circuit court of Will County, the defendant was found guilty of both offenses charged. Smith appeals.

The defendant raises five issues on appeal. First, he argues that a bill of sale found at the address defendant gave police at the time of his arrest which contained a description and the serial number of one of the two guns found in Zdralevich's house was hearsay and, therefore, improperly admitted. Second, defendant contends that he did not receive adequate representation and that the trial court erroneously allowed the public defender to argue his ineffective-assistance-of-counsel claim. Third, defendant argues that the trial court improperly considered the threat of serious harm as an aggravating factor. Fourth, the trial court erred by refusing to give defendant credit for time spent in custody in another State. And last, the defendant's burglary conviction is based upon the same physical act as the armed violence conviction and must be set aside.

■ As to the defendant's first contention that the trial court erroneously admitted a bill of sale from defendant's brother to him which reads as follows:

"3-3-81

One Ruger RDA 34-357 Cal. D.A.R.
S. No. 156-45972
Sold to George W. Smith, Jr.
F.O.I. # 2167807 for the sum of $200.00

by David Smith
F.O.I. - 1709231,"

the defendant objected on the grounds that the document was hearsay, and the trial court overruled the objection on general grounds. The defendant contends that this document was clearly hearsay, because it was offered to prove the truth of the matter asserted. We disagree and find that this document was offered to establish a link between the

defendant and the gun found in the burglarized house. It is immaterial that David Smith, the alleged brother of the defendant, sold defendant the gun for $200.

Recently the Illinois Supreme Court decided a similar case. In *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840, the supreme court found that a laundry receipt found at the motel room recently occupied by the defendant was properly admitted. The court reasoned that the receipt was not offered to prove that Stewart had his clothes cleaned at the particular laundry. Instead, the receipt linked Stewart to the motel room, which in turn linked him with the automobile involved in the murders at Fredd's grocery store. (105 Ill. 2d 22, 57-58.) Like the laundry receipt in *Stewart*, the bill of sale in this case linked the gun found in Zdralevich's house to the defendant. Therefore, because the bill of sale was not offered to prove the truth of its contents, we find that it is not hearsay.

The defendant goes on to argue that if the bill of sale was not offered for the truth of the matter asserted, then it was irrelevant. The defendant cites *People v. Coleman* (1983), 116 Ill. App. 3d 28, 451 N.E.2d 973, for the proposition that if the probative value of evidence depends completely upon its truth it is not admissible. The probative value of this document extends far beyond its truth. The document would have probative value so long as it was found in a place known to be occupied by defendant and having the same serial number as the weapon found in the burglarized home. The probative value of the bill of sale cannot be limited to the transaction between the brothers. Furthermore, in *Coleman* this court found a note naming the defendant, the victim of the murder, and a person known to have dated the victim (although the note was so cryptic as to be meaningless) to be admissible because "defendant's possession of the note shows knowledge of a possible romantic triangle and, hence, jealousy as a possible motive for the murder." (116 Ill. App. 3d 28, 35, 451 N.E.2d 973, 977.) We, therefore, find that the bill of sale was not hearsay and was properly admitted.

■ The second allegation of error concerns various aspects of the defendant's contention that the representation he received from the public defender's office was ineffective and denied him his constitutional rights. Defendant complained about his representation at various stages of the proceedings and at one point made a *pro se* motion to dismiss on the grounds that the public defender was not prepared for trial. Defendant's argument is based in large part upon a recent Illinois Supreme Court case, *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045. In *Krankel*, the supreme court found that failure to appoint counsel other than originally appointed counsel to argue defend-

ant's *pro se* motion for new trial based upon ineffective assistance of counsel was error and remanded the cause for a new hearing on the ineffective-assistance-of-counsel issue. In *Krankel*, the original appointed counsel had apparently failed to raise and investigate an alibi defense which defendant Krankel had informed the public defender of and had provided names of witnesses. No witnesses were interviewed. The supreme court remanded with instruction to the trial court to conduct a post-trial hearing on the ineffective-counsel issue with newly appointed counsel. However, shortly after *Krankel* was decided, the United States Supreme Court decided *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Most recently, in *People v. Albanese* (1984), 104 Ill. 2d 504, the Illinois Supreme Court has interpreted *Strickland* to combine the standards of *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203, and *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634. The standard enunciated by the Illinois Supreme Court in *Greer* is that a defendant is entitled to a new trial if the incompetence created such substantial prejudice that the result of the trial would probably have been different. The *Twomey* standard entitles a defendant to the minimum standards of professional representation.

In *Albanese*, the Illinois Supreme Court stated the standard in *Strickland v. Washington* as follows:

> "[T]he constitutionally guaranteed assistance of counsel has not been provided if the defendant can prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial, a trial whose result is reliable.' [*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.]" (104 Ill. 2d 504, 525.)

Furthermore, the United States Supreme Court offered the following guidelines in applying the newly enunciated standard:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70.)

Applying *Strickland*, the Supreme Court in *Albanese* assumed that all ineffective-assistance-of-counsel allegations constituted substandard representation and then determined if, as such, they would have

changed the result of the trial.

Using the analysis of our supreme court in *Albanese,* we do not find that the error claimed by defendant would have changed the result in this case. The gist of defendant's claim is that his meeting with defense counsel lasted only 10 to 12 minutes and used faulty strategy in trying this case. Unlike *Krankel* and *People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350, where defendants claimed counsel had failed to raise alibi defenses in their respective lawsuits which, if proved, would have resulted in their acquittal, in this case, where defendant was caught burglarizing Zdralevich's house, it is unlikely that a longer conference between client and counsel would have changed the result. In fact, defendant points to nothing concrete which counsel neglected to do which would have had any bearing on the result of this proceeding. This the defendant must do in order to meet the test recently enunciated in *Strickland* and adopted by the Illinois Supreme Court in *People v. Albanese.*

■ Third, defendant contends that the trial court improperly considered the threat of serious harm as an aggravating factor when the threat of serious harm is inherent in the offense of armed violence. As the State points out, the threat of harm is greater in this case because it involved the entry into a residence. As we held in *People v. Gomez* (1983), 120 Ill. App. 3d 545, 458 N.E.2d 565, there was a rational basis for a distinction between residential and nonresidential burglary, because in a residential burglary "there is a considerably greater chance of injury and danger to persons in the home context than in the burglary of a place of business." (120 Ill. App. 3d 545, 549, 458 N.E.2d 565, 568.) Therefore, we find that the trial court could consider the threat of serious harm as an aggravating factor even though it is arguably implicitly included in the offense of armed violence.

■ The fourth and fifth allegations of error, that defendant was not given credit for time spent incarcerated in another State and that his burglary conviction must be vacated because it was based upon the same physical act as the armed violence conviction, are conceded by the State. Because we find no other error here, we remand with instructions to vacate the burglary conviction and credit the defendant for 75 days spent in custody in Michigan and that the mittimus be amended accordingly.

Affirmed in part, reversed in part and remanded with instructions.

BARRY and WOMBACHER, JJ., concur.